May it please the court to Deputy Attorney General Matt Mulford on behalf of the state. This court should reverse the judgment of the District Court for two reasons. The first, the District Court committed illegal error and made clearly erroneous factual findings in reopening Hall's matter under Federal Rule of Civil Procedure 60B. And second, after the court did reopen the matter, it erred under the EDPA, the statute limitation, or excuse me, EDPA, the statute in granted relief on the merits. The court erred in granting relief on the merits. Turning to the first issue, this case hinges on what happened January and February of 2012. That was more than a dozen years after the murder. It was eight years after the finality of the state court judgments that affirmed Mr. Hall's conviction for first degree murder. It was five years after the District Court dismissed his habeas corpus petition because he had not exhausted remedies and because he had not followed court orders. And it was three years after he had said nothing in any court about why he had abandoned his petition. Well, why isn't, I mean, you know that, I mean, I'm sure that both of you on Shearer's, you know that I dissented. All right, so but why, and so I'm a dissent, so the majority held otherwise, so why isn't Shearer's an intervening change in the law considering that the panel majority held that the trial court's use of Calgic number 2.15 was a constitutional error? Now, I realize it wasn't published, but, you know, is it, is there some argument that it's law of the case or something along those lines? No, Your Honor, it's with, well, the, first of all, a couple answers to that question. One, the Supreme Court has changed the law regarding the federal court's review of that issue, and so we agreed with you before that that was an error. Now, there is new Supreme Court authority from Johnson versus Williams that says that this court respectfully erred when it considered Mr. Shearer's matter the first time around such that there was no constitutional error in either case. Well, there's also Davis v. Ayala, which no one seems to talk about. Well, we cited in our brief, the opening brief. I don't think the other side talked about it. Yes, there are lots of Supreme Court cases that change the rules on why habeas corpus cases come down on the merits, and all of them suggest this court's original determination on the merits was incorrect. Now, but before we get there, there's a procedural question as to why Mr. Hall wasn't retried with Mr. Shearer's in the first place. Again, I'm coming back to January and February 2012 when he was asked, what have you been doing in the meantime? Again, Mr. Shearer's pursued relief. He won relief. He got a retrial in state court. So what happened there? Mr. Hall did nothing. No, but what happened to Mr. Shearer's? He was retried and reconvicted of first-degree murder. He currently has a life sentence in California for committing the same murder after his second trial. Okay. So, any error that happened at the first trial did not affect Mr. Shearer's at the second trial. He was reconvicted for the same crime. We could have, had Mr. Hall not abandoned federal relief in 2012, the state of California could have and was prepared to retry Mr. Hall at that time. But when we asked him, what have you been doing? What have you been doing since the federal court dismissed your habeas corpus petition? What did you do? Did you appeal that decision? No, he did not. Did you go back to state court and see if you can get more relief on your unexhausted claim? No, he did not. He did nothing. So, when we are here contemplating in February of 2012, when the state is contemplating retrying Mr. Shearer's and we ask, well, do we have to retry Mr. Hall too? The answer is, well, no. He's got no reason to be retried. His failure to be retried when we retried Shearer's is due to his own delay. It's his failure to provide any explanation at all. So, the second time Shearer's was retried, they didn't give the jury instruction, which that 2.15, obviously. That's correct. And he was convicted. Yes. So, does that vindicate me on that it was harmless error? In some respects, I suppose. But if there's no error at all, which is what our position is, was then at the time and is again today, it's almost beside the point. This instruction, the instruction that we're talking about on the merits, focuses on inferential reasoning. Okay? And the Supreme Court says as long as this inference is rational, that is a thief stole the property that he possesses. Stolen property means that a thief is the thief. Well, I think we're dealing with the language of permissive and then the other languages that it naturally and logically comes to the conclusion. So, the California Court of Appeal found in Prieto that held that proof a defendant was in conscious possession of recently stolen property simply does not lead naturally and logically to a conclusion the defendant committed murder. If that's true, why isn't this, why isn't it the case that a permissive inference in 2.15 is not one that reason and common sense justify in light of the proven facts before the jury? Okay. Prieto is a Supreme Court decision from California. Interpreting California law. It does say those things. Interpreting California. It says those things. It is doing it in the context of this instruction which talks about the availability of slight corroboration. Okay. So, it is a question of purely state law. The California Supreme Court has emphasized this after Prieto if you want to go back and look, the best case to look is a case called People versus Moore from 2011. It talks about the same Prieto instruction and it's talking about exactly what we're talking about. But the point is, California does not like, the Supreme Court does not like the giving of this 2.15 instruction for a murder case because of the slight corroboration language. That's a stupid instruction. It may very well be. And the Supreme Court has told California don't give it in the future in cases like this and California does not give it in the future in cases like that. But that's. Shouldn't give it in any case. Well, it is appropriate for a theft case. Okay. If you have stolen property and you stole it, then it makes perfect sense. This is a murder case. Yeah. I asked somebody to infer that because they have property that's not theirs, they must have murdered someone to get it. It's a murder case that's based on the felony murder rule. Okay. And so, it is appropriate. But again, California says as a matter of state law, don't give it in murder cases and we don't. Now, coming back to your point about is that a logical inference, that's a separate question. And it is a valid logical inference. And it's a weakly rational inference, but it is nonetheless absolutely valid. Now, the Supreme Court itself. Well, obviously, if someone gets murdered at 12 o'clock and their ring is stolen and at 12.05 a.m. the same five minutes later, a person is in possession of the ring, it doesn't necessarily mean that they committed the murder, but it's. Sure narrows down the field of possible people who might have done it. It's relevant. Absolutely. And that is exactly the logical relevance. And that's why there is no constitutional error in this case. Now, again, the instruction, again, should not have been given. It was error, but the logical inference is sound. And so, what we do is what else is in this record to explain who else may have done it? Mr. Hall, what is your explanation for this ring? And the answer is he has none. Mr. Shears, what's the explanation? Why you were driving around in the victim's car? Well, it turns out they said that it was his grandmother's car. And that's false. That explanation actually is more evidence that they committed these crimes. Now, I see I'm down to two minutes. I would like to save some time for rebuttal, but I'm happy to address further questions. You know, see, this instruction, you know, if you find the defendant was in possession of a recently stolen property, the fact that possession is the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crime of murder. So, it's telling the jury that, you know, the inference itself is not enough to convict guilt to the crime of murder. Before guilt may be inferred, there must be corroborating evidence tending to prove the defendant's guilt. So, okay, that's not enough, that inference. There's got to be some corroborating evidence. However, this corroborating evidence need only be slight and need not by itself be sufficient to warrant an inference of guilt. So, this is what it tells the jury that, yeah, you can infer guilt by the inference that the person is possessing this recently stolen property, but you need a little more. And that's something that's need only be slight, you know. So, it doesn't take much to convict this person of murder, you know. And that's why you've identified both the logical relevance of the instruction and why it could be applied to suggest that Mr. Hall and Shears are guilty. And you have also identified exactly the reason why the California courts say don't give it in a murder case because of that slight corroboration requirement. But all of that is. I wouldn't give it in any case. Fair enough, Judge. You know, it's not necessary, is it? It's not. It's not. Why is it given then? It was a requirement of California law to give it until the law was changed in Prieto that said don't give it. And now it's changed once again and now it's just up for grabs as to whether it's given in any case. So, the law changed. You're telling me that under California law that the court was required to give it? In 1999, yes. And that the prosecutor was required to ask for that? Yes. Must ask for it? In 1999, yes. They had to. Now, then Prieto, they said don't give it anymore. So, in between the trial and the direct appeal in the California Court of Appeal, the law changed in the ways that Your Honor is suggesting is appropriate. Let me, just so that I understand all your level of argument. Okay. At the first level, you're saying the 60B should have never been granted. Yes. Because this is the second and successive and he has not shown any justification. Correct. There's legal error, bad facts. Yes. Let's assume, for purposes of argument, that if the panel went past that, then you're saying it's not constitutional error. Correct. No error at all. For the arguments that, but even if it were an error of some sort, that it's harmless error and a YALA applies. Sure, yes, absolutely. Those are your levels of argument. That would be the bottom, right. And yes, that's right, yes. But you're not conceding your first level. Anywhere down the way, no, yes. So, I'm lost. It was error in Scherer's case and he got a new trial because of that error. Now, I understand he was convicted again, but I assume he was convicted for, and they didn't use that instruction. Why was it error in co-defendant's case, but it's not error in this defendant's case? That's where I'm lost. Okay. Today, it is not error. Well, our argument has always been that it has never been constitutional error. Today, it is not a legal error in this court because after Mr. Hall's case was decided in state court and today, when we're back in federal court, the Supreme Court has changed the way we look at habeas corpus cases. There is a new case from the United States Supreme Court called Johnson versus Williams that was issued after that day in February 2012. I said Mr. Hall, you know, conceded that he didn't have any relief. That changed the way the merit should be analyzed. So, it was an error in 2009 or 11 when we were here in this court previously. It is no longer an error today in 2015. So, counsel, I've seen the record you indicated and I think you said in your oral argument that the state went to Hall before you decided or before you retried Mr. Shears and you gave him a copy of the decision in Shears. That's true. Was he represented by counsel at that time? Not at that time. After that time, he filed what was his second Rule 60B motion, the first one the district court had denied without prejudice. We gave him a copy of Shears' case. So, we waited to see what happened with Shears. After Shears was final, yes, we gave him a copy of the judgment in this court's opinion. At that point, he filed a second Rule 60B motion. When you gave him a copy of the Shears' case, did you indicate that you'd be willing to retry him? It was pretty obvious that we were going to retry Mr. Shears at that point. And then, since that point, our court filings updated the federal district court as to the status of where Mr. Shears' case was. Did you give him that offer? I guess what I'm saying is you gave him a copy of the decision and then he wasn't represented by counsel and you expected him to do that. Okay. He filed a second Rule 60B motion. We opposed. His response to our second Rule 60B motion in February 2012 was, I concede. I have no basis to receive relief under Rule 60B. That would have been the time for him to provide any justification for any delay up until then, but he had none. In fact, he said, I have to go back to state court and do things with my other unexhausted claim. That's what he did. Now, even then, the state doesn't think that the case should have ended because, at that point, the federal district judge then appointed counsel for Mr. Hall who then presumably had all the opportunity in the world to investigate what he'd been up to during the previous three years when we still have nothing today. And so that's why 60B relief should be denied. Thank you. Good morning. Robert Rexroth for Mr. Hall. I've got to tell you, I'm a criminal defense lawyer. I don't think I've ever sat at that table. I've never gone second in this court. A couple things I'd like to clarify, and then I'd like to address Judge Callahan's concerns. What did you just say? I'm sorry? What did you just say? I just said I'm a criminal defense lawyer, and I've never gone second before this court. It's an odd experience for me. Oh, okay. To be the respondent. To be the appellee, exactly. I'm surprised I didn't make a typo in my brief. Just real quick, addressing your last point with the state. The state did give Mr. Hall a copy of the Scherz decision. It was ordered to by Judge Hayes. That's the only reason that I can tell that they gave Mr. Hall a copy. And there is nothing to indicate, because it was never done, that Mr. Hall was given an opportunity to be retried with his co-defendant. At the time that this was being litigated with counsel in the district court before Judge Hayes, the state had not retried Mr. Scherz. And the state certainly could have done so. Mr. Hall, they could have brought Mr. Hall in, and they could have done it at once. Second, going back to where this initially began, whether Scherz is binding on Mr. Hall's case. I don't see how it can't be, and for a couple reasons. If you look in the state's brief, they say explicitly, had it not been for the Johnson decision being decided by the United States Supreme Court, that they likely would not have taken this appeal. They think Scherz applies to Mr. Hall's case. But if Johnson can abrogate published opinions, it certainly can abrogate a non-pub. It certainly does. It can certainly pull the legs out from under that. Except Johnson just doesn't address anything in Mr. Hall's case. Before moving on to that point, and I would like to address that if I could, regarding the fact that Scherz is unpublished, I mean, there are reasons why unpublished cases can only be cited for limited purposes, even under the relatively new 2000s rule before this court. None of them apply here. It's the exact same case. I mean, it's, and I appreciate that you thought the Scherz panel got it wrong. I appreciate that, but the Scherz panel came out one way, and it would just be, it would be inconceivable for this panel to come out a different way. It would certainly, you know. Well, it doesn't, not really in the sense of that now that you're hearing that Mr. Scherz is back on first degree murder, and you're not, your argument, if Mr. Scherz had been, if you want to pull at the heartstrings, if Mr. Scherz had been acquitted, I think I would have to eat a little crow on that maybe the error was harmful. I'm really, I promise you I'm going to get back to Johnson because I think it's important to address that, however. A couple things. We don't have a transcript of Scherz's new trial. I don't even think it's particularly relevant to be perfectly honest. We don't know how that second trial went. That's the, that's the beauty and sometimes the scariness of the Sixth Amendment is you never know who the 12 are in the box. Well, but let's just talk about if, from the standpoint, because when you have multiple co-defendants, the evidence can be stronger as to one than as to another. It's not always exactly the same. So when you do an analysis of prejudice, it does make a difference what the evidence is as to that particular defendant. So I think prejudice as to one defendant doesn't necessarily equate as to prejudice to another defendant, does it? Not necessarily, but the prejudice that you have that. I mean, you could have one person that say like, you know, was on video and that the other person, they had no evidence against them. I agree. However, the prejudice, when you're comparing the relative harm of this constitutional error to Mr. Scherz and Mr. Halls has to be benchmarked to the initial joint trial. I don't think a subsequent trial for either one of them is necessarily relevant to the prejudice determination. Second. I'm inclined to agree with you on that particular point, but I still think that the evidence wasn't the same as to all the defendants in that case. You know, frankly, I'm getting to Johnson. And get to Ayala, too. The state waived any argument that the constitutional error was harmless. It's not in their opening brief. There's one line that says, hey, harmlessness might be. That's the date of their opening brief. Ayala came down last, pretty recently. Agreed. Opening brief, let me make sure I have the right one, was filed January 16, 2015. Ayala was after that. Yes. But what I'm saying is, if you don't raise an issue in your opening brief, you waive it. And the only thing the state put in their opening brief about the harmlessness or harmfulness of the constitutional error was, hey, this analysis might change. That's all they said. They didn't argue it. They didn't give this court one fact that would allow this court to determine the relative, you know, who had the stronger case, Schurz or Hall? Don't know. And frankly, I didn't address it in my answering brief because they didn't raise it. They, if you look at pages 55 to 56 of the opening brief, the only time, and it's the only place in the whole brief where harmlessness is mentioned, it's like, well, harmlessness might change. That's not preserving an issue. That's not saying we're raising the issue of harmlessness, and here's why it was harmless. It's just saying, hey. Well, but the state courts addressed harmlessness, correct? Yes, under the wrong standard. And, but then Ayala talks about what's deference we give to the harmless analysis, and that's after the fact. Indeed. If the court wants to order. I'm sure it wasn't your happy time when you saw I was on the panel. No, no, because, look, no, it didn't bother me at all, to be quite honest, Judge, because judges have differences of opinion, and judges follow the law, and I'm okay with that. Look, if you want further briefing on Ayala, maybe it's appropriate, but I'm sticking with my position that they waived it because they just didn't raise it. I mean, it's a 70-page brief. They didn't say a darn thing about why Mr., why the evidence against Mr. Hall would have meant that the constitutional error was harmless, and if I could, I'm down to three, I'd like to focus on Johnson. In the same way that the state's whole argument on the Rule 60 issue is based on a misreading of Crosby, their whole argument as to why Schurz doesn't apply to Mr. Hall's case is a misreading of Johnson. Johnson is a standard of review case. It's when this court decides that what this court should do when it has decided that a California court hasn't addressed a federal issue. The exact opposite happened in this case. No one applied a de novo standard of review, not in Mr. Hall's case and not in Schurz's case. No one did that. Everybody applied the restricted deferential review that AEDPA sets out, and if you go back to Schurz, the majority opinion in Schurz, it acknowledges that the California court decided the federal issue of whether this instructional error was of constitutional magnitude because they cite to the Baines case, and when you go to the Baines case, the Baines case says, hey, look, when a California court is dealing with an instructional error and deals with it, and then applies the state court the non-constitutional harmless analysis, we presume the state court addressed the federal issue and said it's not of federal magnitude, and that's exactly what Schurz said. In a lot of ways, Johnson stands for exactly the opposite proposition that the state wants it to. Johnson is just solely, hey, we're not going to presume that a state judge looked at a federal claim and said, hey, I'm going to punt on that. It's not my job. That's what Johnson addresses, and then what is the appropriate standard of review? None of that happened here. In terms of, I've got 44 seconds. In terms of the Rule 60B, I don't know what the state wants from Crosby. Judge Scalia said real clear, 60B is available for habeas litigants if they're not raising a new claim and they're only attacking the validity of a former federal decision, and that's what Mr. Hall did here once he was appointed counsel before the district court. He asked for relief from federal Judge Hayes' order without prejudice dismissing as a mixed petition. That's what Judge Hayes granted relief on. There's no statute of limitations issue here because Mr. Hall's, this issue, was timely filed and exhausted. There's none of that. Crosby just doesn't address what happened here. As for the state's argument that there's no factual foundation, I can't believe, being a criminal defense attorney, that I'm doing this, but oh goodness, the standard of review abuse of discretion is horrible, right? We protect factual findings by the district court. Judge Hayes put a thoughtful, written order. It's in the record. He had a basis for what he did. He had a reason for doing it. It was logical. It's appropriate under Rule 60. Well, if he had wanted, let's say if he said I want to be tried with Schurz, I think it's pretty, you know, I don't think most co-defendants want to be tried together. It's because then you can blame it on each other. So what if he were making a strategic decision, I'm just not going to do anything because I don't want to be with Schurz. Is that showing diligence? There is no evidence that he was. Or is that just rolling the dice and you get whatever? Two points. There's simply no evidence that that is what occurred. There just isn't. There isn't even a hint. There isn't even, we're talking about inferences. You can't even draw that inference from anything in the record because it likely. It didn't work out too well for either of them when they were tried together. Second, well, whether he wanted to be tried, I don't know. Mr. Hall's ability to wait a case, I'm assuming, is not great. The second answer is, look, it was after Schurz was granted relief by this court that Mr. Hall said, hey, wait, what about me? I was supposed to be, I was being told that I was on those. That's when he asked. It was before retrial, Mr. Schurz's retrial, that Mr. Hall asked for relief. And it was the state who dragged this out. And they're within their right. They're arguing legal points. But they very well could have said, you know what? We're not going to argue about the 60B. We're not going to argue about Johnson. We're just going to retrial. There was nothing preventing that. I guess to answer your point, it wasn't within Mr. Hall's power because he tried to re-invoke the power of the district court appropriately before Schurz was actually tried. So he could have been roped in. He tried to get the me too, you know. Well, I thought I was, okay. We're, okay. All right. Thank you. The matter is submitted.
judges: Bastian, Pregerson, Callahan